**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEBORA BOYER, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 15-8595 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Plaintiff Debora Boyer's ("Plaintiff") appeal from the final decision of Nancy A. Berryhill,[1] Acting Commissioner of the Social Security Administration ("Defendant" or "the Commissioner"), denying her request for benefits. (ECF No. 1.) The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and reaches its decision without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court remands to the administrative law judge ("ALJ") for further analysis.

**I. BACKGROUND**

**A. Procedural History**

On June 15, 2011, Plaintiff filed an application for Social Security Disability Insurance Benefits (DIB), alleging a disability onset date of June 9, 2001. (Administrative Transcript ("Tr.")

---

[1] Nancy A. Berryhill has succeeded Carolyn W. Colvin as the Acting Commissioner of the Social Security Administration.

221-23.)[2] Plaintiff's counsel subsequently amended Plaintiff's disability onset date to June 14, 2011. (*Id.* at 34.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 113, 118.) The ALJ conducted a hearing on April 17, 2014 (*id.* at 35-61) and, on June 9, 2014, the ALJ found that Plaintiff was not disabled (*id.* at 28). On October 14, 2015, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1.) Plaintiff subsequently filed the instant appeal. (Compl., ECF No 1.) Plaintiff filed her moving brief on November 4, 2016. (ECF No. 20.)

### B. The ALJ's Decision

On June 9, 2014, the ALJ rendered his decision. (Tr. 17-28.) The ALJ initially noted that in addition to the issue of whether Plaintiff was disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"), there is an issue as to whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Act. (*Id.* at 17.) The ALJ found that Plaintiff had acquired sufficient quarters of coverage to remain insured through September 30, 2013. (*Id.*) As such, the ALJ indicated that Plaintiff must establish disability on or before September 30, 2013, in order to be entitled to benefits. (*Id.*)

The ALJ next set forth the Social Security Administration's five-step sequential process for determining whether an individual is disabled. (*Id.* at 18-19.) As to the first step of the sequential process, the ALJ found that Plaintiff did not engage in any substantial gainful activity from her alleged disability onset date through the date last insured. (*Id.* at 19.) At step two of the sequential analysis, the ALJ found that the medical evidence established the existence of the following severe impairments: "[h]ypothyroidism, fibromyalgia[,] and mood disorders." (*Id.*) At step three of the sequential analysis, the ALJ found that none of Plaintiff's impairments met or

---

[2] The Administrative Transcript is located at ECF Numbers 17-1 through 17-11. This Memorandum Opinion only references the actual page numbers of the Administrative Transcript and not the corresponding ECF numbers.

2

medically-equaled the severity of one of the Listed Impairments in 20 C.F.R. 404 subpart P, Appendix 1. (*Id.* at 20.) In making this determination, the ALJ summarized the evidence as to Plaintiff's physical conditions of hypothyroidism and musculoskeletal/fibromyalgia, as well as the evidence with respect to Plaintiff's foot impairment, and stated that he found no evidence that Plaintiff's physical impairments were of the severity outlined in Section 1.02 or 9.00. (*Id.* at 20-21.) In addition, the ALJ found that the severity of Plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 or 12.06. (*Id.* at 22.) In reaching his decision, the ALJ discussed the medical records related to Plaintiff's mental status and analyzed the "paragraph B" and "paragraph C" criteria. (*Id.* at 21-23.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b). Specifically, [Plaintiff] is able to lift up to 20 pounds and can stand/walk for six hours in an eight-hour day and sit for six hours or more in an eight-hour day. However, [Plaintiff] is restricted from detailed instructions and limited to occasional contact with the public.

(*Id.* at 23.)

At step four of the sequential analysis, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 26.) The ALJ stated that Plaintiff was born on November 26, 1965, and was forty-seven years old, defined as a younger individual 18-49, on the date last insured. (*Id.* at 27.) The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. (*Id.*) The ALJ stated that transferability of job skills is not material to the disability determination because the use of the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not she has transferable job skills. (*Id.*) At step five of the sequential analysis, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can

3

perform. (*Id.*) As such, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, from the alleged onset date through the date of the decision. (*Id.* at 28.)

## II. LEGAL STANDARDS

### A. Standard of Review

On appeal from the final decision of the Commissioner of the Social Security Administration, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The district court must determine whether or not there is substantial evidence in the record to support the Commissioner's decision. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "more than a mere scintilla." *Plummer*, 186 F.3d at 427. "It means such relevant evidence as a reasonable mind might accept as adequate." *Id.* In reviewing the record for substantial evidence, a court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford*, 399 F.3d at 552 (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

### B. Establishing Disability

In order to be eligible for disability benefits, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that

4

[s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Social Security regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that she has not engaged in any "substantial gainful activity" since the onset of her alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

If the first two steps are satisfied, the third step requires the claimant to provide evidence that her impairment is equal to one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and is automatically entitled to disability benefits. *Id.* If she cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether the claimant's RFC permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant can perform her previous line of work, then she is not "disabled" and not entitled to disability benefits. 20 C.F.R. § 404.1520(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

If the claimant is unable to return to her previous work, the analysis proceeds to step five. At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work that is consistent with her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g); *see Palmer v. Comm'r of Soc. Sec.*, 410 F. App'x 490, 492 (3d Cir. 2011). If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits.

### III. DISCUSSION

#### A. Plaintiff's Alleged Severe Impairments

Plaintiff argues that, at step two of the sequential analysis, the ALJ failed to acknowledge that she suffers from severe impairments in standing and walking. (Pl.'s Moving Br. 17, ECF No. 20.) Plaintiff also argues that the ALJ should have found that she suffers from: (1) the severe impairment of arthritis in her hands; (2) a severe impairment in her shoulder; and (3) severe impairments based on her neck and spine pathology. (*Id.* at 18-21.) Defendant argues that the ALJ reasonably identified Plaintiff's severe impairments at step two of the sequential analysis. (Def.'s Opp'n Br. 11.) Defendant also argues that the ALJ appropriately found that Plaintiff's impairments did not meet or medically equal the listings at step three of the sequential analysis. (*Id.*)

Plaintiff bears the burden of proof at steps two and three of the sequential analysis. *See Malloy*, 306 F. App'x at 761. Here, Plaintiff did not meet her burden. Although the ALJ may not have specifically discussed each of Plaintiff's medical conditions at step two of the sequential analysis, the overall decision reflects that the ALJ considered Plaintiff's medical conditions in reaching his determinations. Moreover, while Plaintiff cited records in support of her various impairment-related assertions, she did not demonstrate how she would prevail at step three of the

6

sequential analysis. The Court finds *Holloman v. Commissioner of Social Security* persuasive in this regard. 639 F. App'x 810, 814 (3d Cir. 2016)). In *Holloman*, the Third Circuit stated:

> [the plaintiff] . . . does not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not. . . . Even if we found a portion of the ALJ's step-three analysis to be deficient, we would have no reason to conclude that the deficiency in analysis was harmful to [the plaintiff's] claim.

*Id.* at 814. Here, the Court finds that Plaintiff did not meet her burden of demonstrating that the ALJ erred at step two or step three of the sequential analysis. Accordingly, the Court upholds the ALJ's step two and step three determinations.

### B. The Weight the ALJ Provided to Opinion Evidence

Plaintiff argues that the ALJ failed to give controlling weight to the opinion of her treating physician, Dr. Bryhn, of Delaware Valley Physicians. (Pl.'s Moving Br. 28.) Plaintiff asserts that she had eleven appointments with Dr. Bryhn between September 6, 2011 and April 10, 2014. (*Id.*) Plaintiff further asserts that Dr. Bryhn completed two medical source forms, one form with respect to her physical abilities and the other with respect to her mental abilities. (*Id.*) According to Plaintiff, if the ALJ had credited Dr. Bryhn's opinion, he would have found Plaintiff disabled "because accommodations were required for her to perform work, and also, because the limitations on her hands and arms were so significant that most work would be eroded." (*Id.* at 29.) With respect to her mental status, Plaintiff asserts that for seven of her appointments, Dr. Bryhn's notations included anxiety and/or depression. (*Id.* at 30.) Plaintiff argues that Dr. Bryhn opined that she has poor concentration, persistence, and pace. (*Id.*) According to Plaintiff, the ALJ improperly discredited Dr. Bryhn without citation to contrary medical evidence as required. (*Id.* at 31.) Plaintiff further argues that there is no regulation or case law to suggest that Dr. Bryhn's

opinion with respect to her mental abilities "can be rejected out of hand because [Dr. Bryhn] [is not] a psychiatrist." (*Id.* at 32.)

"ALJs have a duty to develop a full and fair record in social security cases." *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As part of the review, courts "must take into account whatever in the record fairly detracts from its weight." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988)). "[W]here there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007). In addition:

> [A]n [ALJ's] findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

An ALJ must provide the reports of treating physicians great weight "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000 (citing *Plummer*, 186 F.3d at 429)). In addition, an ALJ must weigh all evidence and resolve all material conflicts when deciding how much weight to provide to a treating physician's opinion. *Barnhill v. Astrue*, 794 F. Supp. 2d 503, 515 (D. Del. 2011). With respect to evaluating opinion evidence for claims filed before March 27, 2017, 20 CFR § 404.1527(c)(2) provides that:

> [g]enerally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 CFR § 404.1527(c)(2). The factors an ALJ will consider if he does not give a treating physician's opinion controlling weight include: (1) the nature and extent of the treatment relationship; (2) the medical evidence the treating physician offered in support of her opinion; (3) how consistent the medical evidence is with the record as a whole; (4) whether the opinion relates to the treating physician's area of specialty; and (5) any other factors that tend to support or contradict the medical opinion. 20 CFR § 404.1527(c)(2)(ii)-(6).

An ALJ is also required to consider the medical evidence and make "reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [the claimant's] ability to work." 20 C.F.R. § 404.1529(c)(2). The ALJ cannot reject subjective claims simply because they are not substantiated by medical evidence; the ALJ is also required to look at information provided by a claimant about her pain. *Id*. The ALJ must follow a two-step process for evaluating pain: first, whether there is a medical impairment that could reasonably be expected to produce the pain; and second, an evaluation of

the symptoms to determine if they limit the claimant's ability to work. SSR 96-7p.[3] The evidence an ALJ should consider includes:

1. [The individual's] daily activities;
2. The location, duration, frequency, and intensity of [the individual's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [the individual] take[s] or [has] taken to alleviate . . . pain or other symptoms;
5. Treatment, other than medication, [the individual] receive[s] or [has] received for relief of . . . pain or other symptoms;
6. Any measures [other than treatment the individual] use[s] or [has] used to relieve . . . pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
7. Other factors concerning [the individual's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii).

On January 23, 2014, Dr. Bryhn submitted a physical source statement regarding Plaintiff. (Tr. 793-94.) Dr. Bryhn's responses to the questionnaire indicated that Dr. Bryhn: (1) had contact with Plaintiff approximately every six weeks for two years; (2) diagnosed Plaintiff with hypothyroidism, fibromyalgia, fatigue, and chronic pain – multiple areas; and (3) stated that Plaintiff's prognosis was poor. (*Id.* at 793.) The Questionnaire also indicated that Plaintiff: (1) could sit 0-2 hours in an eight-hour workday; (2) could stand/walk one-hour in an eight-hour workday; (3) must periodically alternate between sitting and standing every thirty minutes to relieve pain or discomfort; (4) could rarely lift less than ten pounds; (5) could never lift ten to fifty or more pounds; (6) could never perform upper extremity pushing and/or pulling; (6) could rarely perform lower extremity pushing and/or pulling; (7) could occasionally climb stairs; (8) could never climb ramps/ladder/rope/scaffold, bend/stoop, balance, kneel, or crouch; (9) could rarely

---

[3] SSR 96-7p has been superseded by SSR 16-3p effective March 28, 2016. The Court discusses SSR 96-7p because it was in effect at the time of the hearing.

reach in all directions in an eight-hour workday; (10) could occasionally perform handling, fingering, and feeling in an eight-hour workday; (11) must avoid temperature extremes, hazards, fumes, odors, chemicals, and gases; (12) would require unscheduled breaks and walking breaks every thirty minutes; (13) would require a reclining break;[4] and (14) would require leg elevation every two hours. (*Id.* at 793-94.) In response to the question, "Please describe any responses to treatment (e.g., medication side effects), which may have implications for work activity," Dr. Bryhn responded, "fatigue, impaired concentration and memory, dry mouth, nausea, [and] stomach pain." (*Id.* at 794.) Dr. Bryhn also stated that Plaintiff had "multiple trigger points neck, shoulder, back, leg, x-ray back, spondylosis L5-S1 . . . rotator cuff tear left shoulder. Poor mobility, L shoulder." (*Id.*)

In a mental medical source statement, Dr. Bryhn indicated that Plaintiff is able to understand, remember, and carry out instructions affected by the impairment. (*Id.* at 795.) Dr. Bryhn also stated that Plaintiff has moderate restrictions for work-related mental activities that involve: (1) understanding and remembering short, simple instructions; (2) carrying out short, simple instructions; and (3) the ability to make judgments on simple work-related decisions. (*Id.*) Dr. Bryhn stated that Plaintiff has marked restrictions for work-related mental activities that involve: (1) understanding and remembering detailed instructions; and (2) carrying out detailed instructions. (*Id.*) In addition, Dr. Bryhn found that Plaintiff is able to respond appropriately to supervision, co-workers, and work pressures in a work setting. (*Id.* at 796.) With respect to the capabilities affected by Plaintiff's impairments, Dr. Bryhn found that Plaintiff's "lifting-exertion of muscles" had the effect of "pain for days – [weeks]" and that Plaintiffs "concentration" was

---

[4] Dr. Bryhn did not include the length of "reclining breaks" Plaintiff would require. (Tr. 794.)

11

"impaired." (*Id.*) Finally, Dr. Bryhn stated that Plaintiff had: (1) poor mobility; (2) tenderness in her left shoulder; (3) tenderness/arthritis in her hands; and (4) arthritis [indiscernible] feet." (*Id.*)

Here, the ALJ did not provide sufficient analysis from which the Court could find that the weight he provided to Dr. Bryhn's opinions was supported by substantial evidence. With respect to the physical medical source statement, the ALJ accorded "little if any weight" to Dr. Bryhn's "restrictive assessment, in particular, as it relates to all times during the period in question." (*Id.* at 26.) The ALJ stated that "Dr. Bryhn's assessment was seemingly made with obvious emphasis placed on [Plaintiff's] subjective complaints, which are not credited at any time on or before September 30, 2013." (*Id.*) In addition, the ALJ gave "little weight" to Dr. Bryhn's mental source statement because Dr. Bryhn is not a mental health specialist. (*Id.*) The ALJ also stated that:

> while Dr. Bryhn indicated that [Plaintiff] has impaired concentration and at times has difficulty with medical history, such observations were not made while [Plaintiff] testified at the hearing and responded appropriately to the questions asked. Nevertheless, in abundant fairness, the undersigned considered Dr. Bryhn's assessment in formulating the above [RFC].

(*Id.*) The ALJ's limited discussion did not include sufficient analysis for rejecting Dr. Bryhn's medical source statements.

In his opinion, the ALJ summarized Dr. Bryhn's medical records, including Plaintiff's records related to her allegedly worsening: (1) musculoskeletal pain/fibromyalgia between March 26, 2013 and September 26, 2013; and (2) foot impairments between June 12, 2013 and April 2014. (*Id.* at 20-21.) After summarizing the evidence of record, the ALJ stated that "there is no evidence that that [sic] claimant's physical impairments were attendant with the degree of severity outlined in Section 1.02 or 9.00." (*Id.* at 21.)

Plaintiff's date last insured was September 30, 2013. Based on a careful review of the record, the Court finds that the demarcation in Plaintiff's symptoms between Plaintiff's date last

12

insured and the submission of Dr. Bryhn's January 23, 2014 medical source statements is not as clear as the ALJ appears to find. Notably, a treating doctor's opinion lacks probative value if it "d[oes] not relate back to the period for which Plaintiff [was] insured for benefits." *Jones v. Barnhart*, No. 03-6660, 2005 WL 2033383, at *6 (E.D. Pa. Aug. 23, 2005). Nevertheless, the record in the present case reflects that: (1) one of the conditions that Plaintiff suffers from is fibromyalgia, which raises unique issues due to the nature of the disease;[5] (2) the exacerbation of Plaintiff's symptoms appears to have closely straddled the date last insured; (3) as Plaintiff's treating physician for a period of two years, certain opinions in Dr. Bryhn's January 23, 2014 medical source statements may relate back to the period during which Plaintiff was still insured, which ended on September 30, 2013; (4) the ALJ afforded great weight to other opinion evidence; and (5) the ALJ rejected Dr. Bryhn's medical source statements in a largely conclusory fashion with cursory analysis.[6]

"When confronted with contradictory medical evidence, the ALJ may choose whom to credit, but in these instances there is an acute need for the ALJ to explain the reasoning behind conclusions." *Hippensteel v. Soc. Sec. Admin.*, 302 F. Supp. 2d 382, 393 (M.D. Pa. 2001 (citing *Fargnoli*, 247 F.3d at 42)).

---

[5] *See Henderson v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012) (stating that "it is error for an ALJ to rely on the lack of objective evidence to reject a treating physician's opinion in a disability case involving a diagnosis of fibromyalgia due to the nature of the disease"); *see also Aidinovski v. Apfel*, 27 F. Supp. 2d 1097, 1103 (N.D. Ill. 1998) (stating that the ALJ "did not acknowledge even once that the disease raises uniquely challenging issues for a disability determination because the objective evidence in a fibromyalgia case generally does not substantiate the patient's potentially severe complaints").

[6] In its opposition brief, Defendant raises certain arguments with respect to factors that may have impacted the weight the ALJ afforded to Dr. Bryhn's medical source statements. (*See generally* Def.'s Opp'n Br., ECF No. 21.) Defendant, however, "cannot do in a brief what the ALJ should have done in making [his] determination. 'It is incumbent upon the examiner to make specific findings – the court may not speculate as to his findings.'" *Hippensteel*, 302 F. Supp. 2d at 391 (citing *Kephart v. Richardson*, 505 F.2d 1085, 1089 (3d Cir. 1974)).

Notably, access to the Commissioner's reasoning is essential to meaningful court review:

> [U]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). Accordingly, the Court finds it necessary to remand.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court remands this matter to the ALJ for further analysis and any proceedings that the ALJ deems fit. The Court shall issue an Order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** May 31, 2017

---

[7] The weight afforded to the other opinion evidence in the record, resolution of the Plaintiff's RFC, and the limitations the ALJ includes in his hypothetical questions to the ALJ may all be informed on remand by the ALJ's consideration of the items set forth in this Memorandum Opinion. The Court, therefore, declines to reach them here. On remand, any hypothetical to the [vocational expert] should "convey . . . all of [Plaintiff's] credibly established limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). In addition, upon remand, the ALJ will have the opportunity to further develop the record as he sees fit.